# No. 25-40241

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Carlos Emiliano Sanchez; Claudia Paulina Sanchez,

Plaintiffs – Appellants,

v.

Marco Rubio, Secretary, U.S. Department of State,

Defendant – Appellee.

## On Appeal from
United States District Court for the Southern District of Texas

7:23-CV-57

# BRIEF OF APPELLANTS CARLOS SANCHEZ AND CLAUDIA SANCHEZ

SUBMITTED BY:

Jaime M. Diez
Jones & Crane
P.O. Box 3070
Brownsville, TX 78523

Telephone: (956) 544-3565
Fax: (956) 550-0006

Texas State Bar Number 00783966

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| Marco Rubio, Secretary, U.S. Department of State | Alyssa Iglesias of U.S. Attorney's Office McAllen, TX |
| Marco Rubio, Secretary, U.S. Department of State | Baltazar Salazar of U.S. Attorney's Office Brownsville, TX |
| Marco Rubio, Secretary, U.S. Department of State | David Byerley of U.S. Department of Justice Washington, DC |

| Appellants: | Counsel for Appellants: |
|---|---|
| Carlos Sanchez | Jaime Diez of Jones & Crane Brownsville, TX |
| Claudia Sanchez | Jaime Diez of Jones & Crane Brownsville, TX |
| Carlos Sanchez | Cathy Potter Harlingen, TX |
| Claudia Sanchez | Cathy Potter Harlingen, TX |

s/Jaime M. Diez
Attorney of record for
Carlos and Claudia Sanchez

# STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument as they believe it could significantly aid the decisional process in this case.

# TABLE OF CONTENTS

Contents                                                                                    Page(s)

CERTIFICATE OF INTERESTED PERSONS ...................................................... iii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iv

TABLE OF CONTENTS ......................................................................................v

TABLE OF AUTHORITIES ................................................................................ vi

JURISDICTIONAL STATEMENT ........................................................................1

STATEMENT OF THE ISSUES...........................................................................1

STATEMENT OF THE CASE...............................................................................2

SUMMARY OF THE ARGUMENT .....................................................................5

ARGUMENT ........................................................................................................7

CONCLUSION....................................................................................................14

CERTIFICATE OF SERVICE ............................................................................15

CERTIFICATE OF COMPLIANCE....................................................................16

# TABLE OF AUTHORITIES

*Bell v. Eagle Mt. Saginaw Indep. Sch. Dist.*, 27 F.4th 313 (5th Cir. 2022).... 6

*Bernstein v. Maximus Fed. Servs., Inc.*, 63 F.4th 967 (5th Cir. 2023)
(per curiam) ................................................................................ 8, 10

*Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199 (2022) ........... 5

*Cambranis v. Blinken*, 994 F.3d 457 (5th Cir. 2021) ..................................... 6, 11

*Clark v. Hanley*, 89 F.4th 78 (2d Cir. 2023)................................................. 8

*In re Cmty. Bank of N. Va.*, 622 F.3d 275 (3d Cir. 2010).............................. 8

*Elliott v. U.S. Dep't of State*, 122 F. Supp. 3d 39 (S.D.N.Y. 2015) ............... 13

*FDIC v. Dawson*, 4 F.3d 1303 (5th Cir. 1993) ........................................... 7, 8

*Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996) ................................ 8

*Fisher v. Johnson*, 174 F.3d 710 (5th Cir. 1999)......................................... 9

*Huynh v. Chase Manhattan Bank*, 465 F.3d 992 (9th Cir. 2006)................... 8

*Jenkins v. Tahmahkera*, 151 F.4th 739 (5th Cir. 2025) ................................ 7

*Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595 (5th Cir. 2000) ....... 7

*Momenian v. Davidson*, 878 F.3d 381, 387 (D.C. Cir. 2017) ....................... 8, 9

*Quinones Madera v. U.S. Dep't of State*, No. 1:19-cv-01798-AWI-SAB,
2020 WL 311357, at *2 n.2 (E.D. Cal. Jan. 21, 2020), *report and
recommendation adopted sub nom. Madera v. U.S. Dep't of State*,
2020 WL 1046875 (E.D. Cal. Mar. 4, 2020) ................................................ 13

*Saleh v. Pompeo*, 393 F. Supp. 3d 172 (E.D.N.Y. 2019) .............................. 11

*Villegas Sarabia v. Noem*, 149 F.4th 554 (5th Cir. 2025) ............................ 4, 5, 13

*Watkins v. Mohan*, 144 F.4th 926 (7th Cir. 2025) ....................................... 8


8 U.S.C. § 1503 ............................................................................... passim

Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ................................. 12


Federal Rule of Civil Procedure 59 .............................................................. 5


5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*
§ 1277 (West 2d ed. 1990)........................................................................ 8

# JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1292 because it is an appeal of orders[1] denying Appellants' claims seeking declarations of citizenship pursuant to 8 U.S.C. § 1503(a).

Appellants timely appealed by filing their notice of appeal[2] within 30 days of the district court's last order of April 16, 2025, denying Plaintiffs' motion for reconsideration.

# STATEMENT OF THE ISSUES

1) Did the district court err in granting Defendant's motion to dismiss on the ground that Plaintiffs had not demonstrated equitable tolling, and in subsequently denying their reconsideration motion without addressing that argument?

2) Did the district court alternatively err in considering the passport denials at issue to be based "upon the ground that [Plaintiffs are] not a national of the United States," as required by 8 U.S.C. § 1503(a)?

---

[1] ROA.411-21, 464-68.

[2] ROA.469, ROA.473.

1

## STATEMENT OF THE CASE

Plaintiffs Carlos and Claudia Sanchez are brother and sister who were born in 2001 and 2004 respectively, both in Mission, Texas, at the San Francisco Mission Maternity Clinic. ROA.155, ROA.157 (Amended Complaint). Records kept by their mother show that she was seen for prenatal care by that clinic. *Id.*

Plaintiffs' parents registered them in Mexico as well, although they were not born there, "because their father as an employee of the BBVA Bancomer Bank had medical insurance that would cover their children if they were registered in Mexico." ROA.159; *see also* ROA 156-57 (quoting U.S. consular Q+A: "Parents cannot forfeit a child's claim to U.S. citizenship. The fact that your child was registered in Mexico does not cancel his or her U.S. citizenship."). The children's baptisms, in 2002 for Carlos and 2006 for Claudia, took place in Mexico but recorded their births as being in Texas. ROA.155, ROA.157. In 2007, both children were issued U.S. passports based on their Texas birth certificates. *Id.*

When Plaintiffs applied to renew their passports in 2014, the Department of State asked for more information, noting for Carlos on April 7, 2014, that the added scrutiny was due to "your birth record [being] filed on August 03, 2001 by a birth attendant who is suspected of submitting false birth records. . . . [T]he Department has evidence that some birth attendants fraudulently registered some births as having occurred in the United States even though they actually occurred outside the United

States." ROA.189; *see also* ROA.193 (similar explanation in April 7, 2014 request for information from Claudia).  Neither sibling submitted more information.

On April 21, 2017, Carlos's application was denied: "The documentation you have provided . . . is not sufficient to establish by a preponderance of the evidence that you were born in the United States.  There exists a foreign birth record indicating that your birth occurred in Tamaulipas, Mexico and you have not submitted any early public records to support your birth in the United States." ROA.192.  The denial offered him 60 additional days to "submit . . . any further information you feel specifically rebuts the conclusions reason [*sic*] listed above for the denial or proceed with available legal remedies." *Id.*

Claudia's denial was issued more than two years earlier, on February 17, 2015, also with a 60-day follow-up window but adding a distinct explanation from Carlos's: "There is a reason to believe that the birth attendant who filed your birth certificate did so fraudulently and we have received no further information about your birth." ROA.196.  Both denials stated that the Department of State was "unable to determine that you are entitled to a passport." ROA.192, ROA.196.  Neither sibling submitted more information, but the record contains their supplemented 2024 passport applications which remain pending. ROA.272.

In between the two denials, in January 2016, a Department of State agent contacted Plaintiffs' parents and met with them in McAllen, Texas. ROA.159-60.

They were told they had to prove their midwife had not fraudulently registered their children's births, and responded by showing Plaintiffs' medical records. ROA.160.

The record contains affidavits concerning Plaintiffs' residence at the relevant times. Carlos was living in Mexico when he applied for passport renewal in 2014 and when he was denied in 2017, moving back to the U.S. in August 2021. ROA.162. Claudia was living in Mexico in 2014-15, when her application was submitted and denied, moving back to the U.S. in August 2022. ROA.164.

These proceedings were initiated with a Complaint filed on February 11, 2023. ROA.12. When Defendant's motion to dismiss was granted on January 23, 2025, ROA.411, the case had been transferred from Judge Hinojosa to Judge Rodriguez.

The district court's order granting dismissal relied on jurisdictional analysis subsequently rejected by *Villegas Sarabia v. Noem*, 149 F.4th 554 (5th Cir. 2025), and concluded that due to a jurisdictional bar, it "cannot apply equitable tolling to salvage Plaintiffs' lawsuit." ROA.418-20. In a brief discussion, the district court added: "[E]ven if the Court could apply the tolling doctrine, it would decline to do so. Plaintiffs seeking such relief must demonstrate that they diligently pursued their rights and that an 'extraordinary circumstance' beyond their control prevented them from filing their lawsuit in a timely manner. Here, Plaintiffs allege no diligent efforts to file this lawsuit or pursue their remedies under Section 1503(b) and (c) during the

4

five-year period after the 2015 and 2017 denials of their passport renewal applications.  In essence, they present no grounds supporting the application of equitable tolling." ROA.420.  Here, the district court added a footnote: "The Court does not reach whether equitable tolling would apply for the time period during which each Plaintiff remained a minor." ROA.420 n.6.

Under Federal Rule of Civil Procedure 59, Plaintiffs filed a timely motion to alter or amend the judgment. ROA.422-30.  The motion asked for reconsideration of the district court's jurisdictional analysis as well as challenging its conclusions on equitable tolling, including the court's election not to address Plaintiffs' status as minors.  The district court denied this motion on April 16, 2025, reaffirming its holding on jurisdiction without addressing Plaintiffs' equitable-tolling contentions. ROA.464.  This appeal followed.

## SUMMARY OF THE ARGUMENT

While this appeal was pending, the Court decided *Villegas Sarabia v. Noem*, 149 F.4th 554 (5th Cir. 2025), which renders the district court's primary, jurisdictional holding incorrect.  Under *Villegas Sarabia*, 8 U.S.C. § 1503's statute of limitations is a claims-processing rule subject to equitable tolling, rather than a jurisdictional bar. 149 F.3d at 568; *see also Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 209 (2022) ("[N]onjurisdictional limitations periods are

presumptively subject to equitable tolling."). Accordingly, to prevail on a motion to dismiss Defendant needs to show that the pleadings "reveal beyond doubt that the plaintiffs can prove no set of facts that would overcome the defense or otherwise entitle them to relief." *Bell v. Eagle Mt. Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022) (citation modified).

Here, Plaintiffs have made a colorable equitable-tolling claim based on a combination of their being outside the United States for much of 8 U.S.C. § 1503's five-year period, and on their status for much of that time as minors who had previously been issued U.S. passports. Given precedent disfavoring early dismissals, without a full record, of cases in which equitable tolling is at issue, and the district court's incomplete evaluation of Plaintiffs' circumstances that justify tolling, they respectfully request that the Court vacate the district court's orders and remand for complete consideration of equitable tolling.

Alternatively, Plaintiffs respectfully request that the Court decide an issue left open in *Cambranis v. Blinken*, 994 F.3d 457 (5th Cir. 2021), and hold that "§ 1503(a) applies only when the Government denies a person a right or privilege of citizenship 'upon the ground that he is not a national of the United States,' 8 U.S.C. § 1503(a), [meaning] this language does not include a circumstance where the Government denies a right or privilege because it finds merely that a claimant has not proved that he is a U.S. national." *Id.* at 464. The statute is clear that

Section 1503(a)'s ambit extends to denials "upon the ground that he is not a national of the United States," which did not occur here. Accordingly, the Court could vacate and remand this matter so Plaintiffs have an opportunity to challenge Defendant's passport denials through a cause of action outside the restrictions imposed by Section 1503.

## ARGUMENT

This Court reviews the district court's findings of fact for clear error and legal issues de novo. *See Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 601 (5th Cir. 2000). When a district court denies equitable tolling as a matter of law, review is de novo. *FDIC v. Dawson*, 4 F.3d 1303, 1308 (5th Cir. 1993). Where a denial of equitable tolling "stems from the district court's weighing of the equities," that decision is reviewed for abuse of discretion. *Jenkins v. Tahmahkera*, 151 F.4th 739, 747 (5th Cir. 2025).

**I. The district court erred in granting Defendant's motion to dismiss on the ground that Plaintiffs had not demonstrated equitable tolling, and in subsequently denying their Rule 59 motion without addressing that argument.**

There is extensive authority disfavoring district-court assessment of equitable tolling without a full record, as occurred in this case. The Court has stressed that: "raising the limitations defense in a motion to dismiss may easily be premature because facts tolling the running of the statute do not necessarily appear in the

7

complaint." *Dawson*, 4 F.3d at 1308 (citing 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1277 (West 2d ed. 1990)); *see also Bernstein v. Maximus Fed. Servs., Inc.*, 63 F.4th 967, 971 (5th Cir. 2023) (per curiam) (same). Indeed, some jurisdictions have adjusted their standard of review to account for tolling's difficulty to assess so early in proceedings, because for "abuse of discretion . . . that deferential standard applies only to a district court's equitable judgment based on a full record." *Watkins v. Mohan*, 144 F.4th 926, 940 (7th Cir. 2025).

Holding off on tolling analysis until a full record is developed is well-founded because "[a]t the pleading stage, there will usually be an obvious need for further factual development on a plaintiff's equitable tolling argument. Equitable tolling can require a nuanced examination of the plaintiff's conduct to determine whether the plaintiff pursued his legal rights diligently and an equitable evaluation of whether the circumstances justify extraordinary relief. Without a complete factual record, a district court generally does not have a reliable foundation for making this kind of fact-dependent equitable judgment." *Id.* at 941 (internal quotation marks and citations omitted); *see also Clark v. Hanley*, 89 F.4th 78, 94 & n.19 (2d Cir. 2023) (citing *Bernstein*); *Momenian v. Davidson*, 878 F.3d 381, 387 (D.C. Cir. 2017) ("courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint" (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)); *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 301-02 (3d

8

Cir. 2010) ("[O]ur Court (and our sister circuit courts) have reasoned that, because the question whether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings, such tolling is not generally amenable to resolution on a Rule 12(b)(6) motion."); *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003-04 (9th Cir. 2006) ("Generally, the applicability of equitable tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss (where review is limited to the complaint) if equitable tolling is at issue.").

Accordingly, at the motion-to-dismiss stage, the bar is very high for ruling out equitable tolling as the district court did. Only if "a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency" should the time bar be imposed then. *Momenian*, 878 F.3d at 387. The district court made no such determination here.

Equitable tolling is context-specific and individualized. *See, e.g.*, *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999) ("As a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules, but we draw on general principles to guide when equitable tolling is appropriate. We must be cautious not to apply the statute of limitations too harshly."). Here, both children were minors living abroad for most of the five-year period that included a global pandemic; the district court failed to assess these

9

factors' interaction or to allow Plaintiffs to develop the record. After obtaining legal advice in the U.S., a strong indication of diligence, Carlos filed within a year of his purported deadline, while Claudia filed within six months of turning 18.

Two additional factors should bear favorably on the equitable-tolling analysis. First, in this case unlike many other Section 1503 matters, Plaintiffs initially had U.S. passports and then were denied renewals based on evidence of generalized fraud that has not heretofore been connected specifically to their births. In analyzing the equities of whether the five-year deadline should extinguish Plaintiffs' claims, these added complexities are germane.

Second, and as further developed in the next section, Plaintiffs should be accorded tolling due to the "extraordinary" and misleading circumstances of the Department of State's denials. Instead of taking action based on concluding that neither Plaintiff is "a national of the United States," 8 U.S.C. § 1503(a), Defendant has kept them in limbo by using a concern about overall fraud to deny them passports without otherwise questioning their citizenship. Especially for non-attorneys, this approach is confusing and misleading and should justify tolling.

Plaintiffs do not present a case where no possible facts could support equitable tolling of the five-year statute of limitations; their amended complaint contains details about their ages and residence abroad. It is not fatal to an equitable-tolling claim even for a "complaint [to be] silent as to . . . diligence." *Bernstein*, 63 F.4th at

10

971. Their claim is not exclusively that they were minors, but rather that being underage combined with residence abroad, away from U.S. legal assistance, and the way in which the Department of State acted to deny their previously valid passports justify, as a whole, equitable tolling. The district court, either initially or on reconsideration, should have allowed factual development of this plausible tolling claim.

**II.     The district court erred in considering the passport denials at issue to be based "upon the ground that [Plaintiffs are] not a national of the United States," as required by 8 U.S.C. § 1503(a).**

Plaintiffs alternatively submit that this Court should decide a question left open in *Cambranis v. Blinken*, 994 F.3d 457 (5th Cir. 2021), and hold that challenges like theirs are properly brought outside of 8 U.S.C. § 1503's confines. In *Cambranis*, the Court declined to consider this argument because that plaintiff "specifically alleged in his amended complaint that DOS 'den[ied] him a United States passport on the ground that he is not a national of the United States.' We will not allow Cambranis to reverse course on appeal." 994 F.3d at 464. The Court commented: "We take no position on the merits of Cambranis's argument, though we note that some courts have found this distinction to be salient. *See, e.g., Saleh v. Pompeo*, 393 F. Supp. 3d 172, 180 (E.D.N.Y. 2019) ('A passport revocation or denial based on a finding that an individual did not submit sufficient evidence to establish citizenship is not a revocation or denial based on a finding of non-citizenship, as is required to

11

bring an action under 8 U.S.C. § 1503(a).').'" *Id*. at 464 n.7.  In this case, Plaintiffs did not plead that the denial conformed to 8 U.S.C. § 1503(a). ROA 153-61.

8 U.S.C. § 1503(a) states:

If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, <u>upon the ground that he is not a national of the United States</u>, such person may institute an action under the provisions of section 2201 of title 28 against the head of such department or independent agency for a judgment declaring him to be a national of the United States, except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding. An action under this subsection may be instituted only within five years after <u>the final administrative denial of such right or privilege</u> and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is conferred upon those courts.

(Emphasis added).  Plaintiffs submit that the better reading of this provision is to apply it only to cases in which a "right or privilege" is denied with a specific finding that the individual concerned is "not a national of the United States."  That approach would cabin § 1503(a) to the most consequential findings, ones that may have wider repercussions for other agencies—and even one's ability to remain in the U.S.  Lesser findings, like insufficiency of evidence in Plaintiffs' denials, could be reviewed under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, rather than incongruously being deemed "the final administrative denial of such right or

12

privilege" when they clearly – and explicitly in the Department's view of repeat passport applications – are not. *See, e.g.*, *Quinones Madera v. U.S. Dep't of State*, No. 1:19-cv-01798-AWI-SAB, 2020 WL 311357, at *2 n.2 (E.D. Cal. Jan. 21, 2020), *report and recommendation adopted sub nom. Madera v. U.S. Dept. of State*, 2020 WL 1046875 (E.D. Cal. Mar. 4, 2020) ("Although Plaintiff's initial application was denied, it was due to Plaintiff not submitting a corrected birth certificate, not because he was found not to be a national of the United States.").

As explained in *Elliott v. U.S. Dep't of State*, 122 F. Supp. 3d 39, 42-43 (S.D.N.Y. 2015), this approach is more faithful to the statutory language:

> Defendants merely denied Plaintiff's application because they concluded that he lacked the proper paperwork to obtain a passport at that time. In essence, Plaintiff was no different from a natural-born citizen whose passport application is denied because he failed to include his birth certificate with his application. In each case, denial was premised on the lack of supporting documentation, not a finding that the applicant was "not a national of the United States." 8 U.S.C. § 1503(a). And in each case, the applicant was free—in fact, encouraged—to make a subsequent application for a passport.

Congress's desire for finality through this provision, *see Villegas Sarabia*, 149 F.4th at 568, would be respected as any decision that conclusively determined someone "is not a national of the United States" would ordinarily be open to challenge only for five years. Other lesser determinations about a "right or privilege" could be made by the agency, but those should not be included in Section 1503's ambit.

13

# CONCLUSION

For the foregoing reasons, the Sanchezes respectfully request the Court either vacate the district court's dismissal and remand for further proceedings on equitable, or hold that Section 1503 does not cover actions such as Defendant's in this case.

SUBMITTED BY:
s/Jaime M. Diez
Jones & Crane
P.O. Box 3070
Brownsville, TX 78523

Telephone: (956) 544-3565
Fax: (956) 550-0006

Texas State Bar Number 00783966

# CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on January 13, 2026, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

<u>s/Jaime M. Diez</u>

# CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:  this document contains 3,243 words.

2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 font

s/Jaime M. Diez

16